**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA, :**
**:**
**v. : Case No. 1:21-cr-0091-RCL-01**
**:**
**CRAIG MICHAEL BINGERT, et al. :**
**Defendant. :**

**DEFENDANT CRAIG MICHAEL BINGERT'S REPLY TO THE GOVERNMENTS RESPONSE TO THE DEFENDANT'S NOTICE THE "PUBLIC AUTHORITY DEFENSE" AND/OR "ENTRAPMENT BY ESTOPPEL DEFENSE"**

Defendant Craig Michael Bingert, by and through his attorney, Allen H. Orenberg, respectfully submits this reply to the governments response (Doc. 96) to the defendant's Notice of Public Authority Defense and/or entrapment by estoppel defense. (Doc. 88) [1]

To be certain, Mr. Doolin asserts a Public Authority Defense as to all Counts of the Indictment, as well as an entrapment by estoppel defense as to all Counts.

**BACKGROUND FACTS**

The U.S. Capitol had barriers restricting its grounds removed by a group of rioters long before Mr. Bingert arrived. In fact, barriers were gone before then-President Trump finished speaking at the Ellipse that day. The barriers were the

[1] Defendant Isaac Steve Sturgeon, by his counsel, joins in this reply..

only demarcation that U.S. Capitol grounds were restricted. By the time Mr. Bingert arrived, Mr. Bingert was on U.S. Capitol grounds among an estimated 10,000 others.

Many parts of the District of Columbia (and, in particular near and around the U.S. Capitol) had been lawfully permitted for First Amendment Assembly on January 6. (See Exhibits A - F).[2] Mr. Bingert believed that Capitol grounds were similarly permitted and unrestrained. Mr. Bingert never entered the Capitol.

To be clear, Mr. Bingert does not use the public authority and/or entrapment by estoppel defense to lawfully sanction the attack on the United States Capitol. However, the public authority defense does apply to all the counts Mr. Bingert is charged with because the instruction to go to the Capitol from President Trump was an instruction to join with others who had already breached the barricaded perimeter before the end of President Trump's speech. This barricaded perimeter was thereafter never restored and when Mr. Bingert arrived, he had no way to tell where the previously restricted area had been established. He thereafter followed thousands of other people on to the West Side of the Capitol.

Mr. Bingert acted on a good faith belief that the President's invitation, combined with a lack of barricades or sign-age, or law enforcement telling people to leave the area, meant that the Capitol grounds that day were unrestricted and available for Trump supporters to gather in First Amendment Assembly. In fact,

[2] Exh. A. – Bryan Lewis Permit; Exh. B. – Jesus Lives Permit; Exh. C. – One Nation Under God Permit; Exh. D. – Rock Ministries Permit; Exh. E .– Virginia Freedom Keepers Permit; Exh. F. – Women For Great America Permit.

The President had invited them to do just that during his speech on the Ellipse and as proof, thousands of people walked the very same path as Mr. Bingert towards what they believed was a continuation of the Rally they had just attended.

It is believed that this particular Court (U.S. District Judge Royce C. Lamberth) has yet to rule on the public authority defense in light of new facts discovered by the Congressional Select Committee to Investigate the January 6th Attack on the United States Capital ("the Committee").[3] The Committee thoroughly investigated the words and actions of then-President Trump in the aftermath of January 6th.

New evidence reveals that the legal statement then-President Trump espoused was a Twelfth Amendment legal statement:

> Eastman offered Vice President Pence two options. First, the Vice President could unilaterally reject the certified electors from several States won by former Vice President Biden, thereby handing the presidency to President Trump. Or, according to Eastman, Vice President Pence could delay the joint session to give State legislatures the opportunity to certify new electors loyal to the President.[4]
>
> In Eastman's theory, which was the foundation of President Trump's January 6th plot, the Vice President of the United States is the "ultimate

---

[3] Counsel is aware that another member of this Court has recently ruled on this same issue, when it denied – in trial – the defendant's Notice of a Public Authority Defense and/or entrapment by estoppel defense, in *USA v. Robert Dennis*, 21-679-JEB. (See pp. 7-8, transcript (excerpts) dated 1/13/2023, attached as Exhibit G)

[4] H.R. Rep No. 117-000, at 428 (2022), *available at* https://www.documentcloud.org/documents/23515172-report_finalreport_jan6selectcommittee

arbiter" and could unilaterally decide the victor of the 2020 Presidential election.[5]

Then President Trump tweeted the legal statement in colloquial terms two times on January 6th, once early in the morning at 6:00AM and once later in the afternoon at 1:17PM:

> If Vice President @Mike_Pence comes through for us, we will win the Presidency. Many States want to decertify the mistake they made in certifying incorrect & even fraudulent numbers in a process NOT approved by their State Legislatures (which it must be). Mike can send it back![6]

> States want to correct their votes, which they now know were based on irregularities and fraud, plus corrupt process never received legislative approval. All Mike Pence has to do is send them back to the States, AND WE WIN. Do it, Mike, this is a time for extreme courage![7]

Then-President Trump's team planned a rally at the Ellipse to show popular support for the legal statement. A rally organizer said the former President would call on his supporters to march to the Capitol from the Ellipse.[8] Then-President Trump affirmatively told Bingert and other supporters "to walk down Pennsylvania

---

[5] H.R. Rep No. 117-000, at 432 (2022), *available at* https://www.documentcloud.org/documents/23515172-report_finalreport_jan6selectcommittee

[6] The American Presidency Project, Tweets of January 6, 2021, 06:00:50, *available at* https://www.presidency.ucsb.edu/documents/tweets-january-6-2021

[7] The American Presidency Project, Tweets of January 6, 2021, 13:17:22, *available at* https://www.presidency.ucsb.edu/documents/tweets-january-6-2021

[8] H.R. Rep No. 117-000, at 66 (2022), *available at* https://www.documentcloud.org/documents/23515172-report_finalreport_jan6selectcommittee

Avenue" "to demand that Congress do the right thing and only count the electors who have lawfully slated."[9]

As his supporters were at the Capitol, then-President Trump specifically rejected telling his supporters to leave:

> Around 3:00 p.m., one proposal was written in block capital letters on a pocket card from the chief of staff's office: ANYONE WHO ENTERED THE CAPITOL ILLEGALLY WITHOUT PROPER AUTHORITY SHOULD LEAVE IMMEDIATELY. The handwriting appears to have been scrawled quickly and somewhat messily. Hutchinson recalled Meadows returning from the dining room with the note in hand and placing it on her desk. The word "illegally" had been newly crossed out. But there would be no further action, Meadows told her.[10]

> Cipollone also made it clear that the advice they were giving to the President never changed throughout this three-hour period. Trump refused to do what was necessary. Committee Staff: [I]t sounds like you from the very onset of violence at the Capitol right around 2 o'clock were pushing for a strong statement that people should leave the Capitol. Is that right? Cipollone: I was, and others were as well.[11]

Then-President Trump sent tweets encouraging his supporters to stay peaceful at the Capital, but not to leave:

---

[9] *Transcript of Trump's speech at rally before US Capitol riot* (Jan. 13, 2021) *available at* https://apnews.com/article/election-2020-joe-biden-donald-trump-capitol-siege-media-e79eb5164613d6718e9f4502eb471f27

[10] H.R. Rep No. 117-000, at 602 (2022), *available at* https://www.documentcloud.org/documents/23515172-report_finalreport_jan6selectcommittee

[11] H.R. Rep No. 117-000, at 79 (2022), *available at* https://www.documentcloud.org/documents/23515172-report_finalreport_jan6selectcommittee

> I am asking for everyone at the U.S. Capitol to remain peaceful. No violence! Remember, WE are the Party of Law & Order—respect the Law and our great men and women in Blue. Thank you![12]

> Please support our Capitol Police and Law Enforcement. They are truly on the side of our Country. Stay peaceful![13]

Only at 6:49 P.M. did former President Trump tell his supporters to leave the Capital, when Mr. Bingert had already been arrested (and released):

> I know your pain. I know you're hurt. We had an election that was stolen from us. It was a landslide election and everyone knows it, especially the other side. But you have to go home now... I know how you feel, but go home and go home in peace.[14]

> The video made clear what had been evident to many, including those closest to him: The President could have called off the rioters far earlier and at any point that day. But he chose not to do so.[15]

---

[12] The American Presidency Project, Tweets of January 6, 2021, 19:24:22, *available at* https://www.presidency.ucsb.edu/documents/tweets-january-6-2021

[13] The American Presidency Project, Tweets of January 6, 2021, 19:38:58, *available at* https://www.presidency.ucsb.edu/documents/tweets-january-6-2021

[14] H.R. Rep No. 117-000, at 606 (2022), *available at* https://www.documentcloud.org/documents/23515172-report_finalreport_jan6selectcommittee

[15] H.R. Rep No. 117-000, at 606 (2022), *available at* https://www.documentcloud.org/documents/23515172-report_finalreport_jan6selectcommittee

## ARGUMENT

The public authority/entrapment by estoppel defense is based on Fifth Amendment Due Process:

> "The [public authority/entrapment by estoppel] defense ... is based on fundamental fairness concerns of the Due Process Clause," and thus relies on an assessment of whether the challenged prosecution "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental" because of the lack of notice and fairness to the charged defendant. The Supreme Court recognized this defense… in three cases, *Raley v. Ohio*, 360 U.S. 423 (1959), *Cox v. Louisiana*, 379 U.S. 559 (1965), and *United States v. Pennsylvania Industrial Chemical Corp.* ("*PICCO*"), 411 U.S. 655 (1973).

*United States v. Chrestman*, 525 F.Supp.3d 14, 29-30 (some internal quotation marks and citation omitted).

This Court recently grappled with the public authority/entrapment by estoppel defense in Judge John D. Bates' recent Memorandum Opinion in *United States v. Sheppard,* Criminal Action No. 21-203 (JDB), (ECF 63, December 28, 2022). "The state of the public authority defense (and its close cousin, entrapment by estoppel) in the D.C. Circuit remains somewhat unsettled. In light of that uncertainty, district courts in this Circuit have adopted other courts of appeals' formulations of the two defenses," as explained:

> To win an entrapment-by-estoppel claim, a defendant criminally prosecuted for an offense must prove (1) that a government agent actively misled him about the state of the law defining the offense; (2) that the government agent was responsible for interpreting, administering, or enforcing the law defining the offense; (3) that the defendant actually relied on the agent's misleading pronouncement in committing the offense; and (4) that the defendant's

> reliance was reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation.

*Id.*; *see also* 525 F. Supp. 3d 14, 31 (D.D.C. 2021) (*quoting United States v. Cox*, 906 F.3d 1170, 1191 (10th Cir. 2018)); *see also United States v. Grider* (*Grider II*), Crim. A. No. 21-022 (CKK), 2022 WL 3030974, at *2 (D.D.C. Aug. 1, 2022) (citing *Chrestman*'s four-factor test).

Many lawyers and judges have thoughtfully reasoned that the public authority/ entrapment by estoppel defense is not a proper defense for statements made by then-President Trump. But how would it look to a jury if the people who incited the failed insurrection go free, while the victims of lies and disinformation pay the price? Such an outcome is offensive to the idea of fundamental fairness and equal justice for all.

**1. Then-President Trump Actively Misled Mr. Bingert about the State of the Law Defining the Offense.**

> "Despite the uncertainty over the elements of the defenses, it is undisputed that [the defendant] must show that he relied on a 'conclusion or statement of law' by the relevant official—here, then-President Trump. The authorization need not necessarily be clear-cut—there is no requirement that former President Trump said exactly: 'It is legal for you to enter the Capitol today and stop the certification.' The official's words or conduct can, in some instances, imply that the conduct is legal."

*See United States v. Sheppard,* Criminal Action No. 21-203 (JDB), (ECF 63, December 28, 2022) (internal quotation marks and citations omitted).

It is believed that this particular Court, has not had the opportunity to rule on the Congressional Committee's newly-discovered evidence (delineated in the

Background Facts, herein-above) [16] that then-President Trump espoused a Twelfth Amendment legal statement, sent two tweets communicating the legal theory on January 6th, encouraged Mr. Bingert to march to the Capital, and specifically rejected telling his supporters to leave the Capital. To date, the other Judges of this Court may have heard statements (and may have considered) from then-President Trump's Ellipse Speech encouraging supporters to march to the Capital. Given this new information, this case may properly be analogized to *Cox v. State of La.*, 379 U.S. 559 (1965). In *Cox*, the appellant was convicted of violating a Louisiana statute which provided:

> 'Whoever, with the intent of interfering with, obstructing, or impeding the administration of justice, or with the intent of influencing any judge, juror, witness, or court officer, in the discharge of his duty pickets or parades in or near a building housing a court of the State of Louisiana * * * shall be fined not more than five thousand dollars or imprisoned not more than one year, or both.' LSA—Rev.Stat. s 14:401 (Cum.Supp.1962).

The Supreme Court in *Cox* held that "[t]he record here clearly shows that the officials present gave permission for the demonstration to take place across the street from the courthouse." *Id.* at 569. "The police admittedly had prior notice that the demonstration was planned to be held in the vicinity of the courthouse." *Id.* at 569. "As Cox approached the vicinity of the courthouse, he was met by the Chief of Police and other officials." *Id.* at 570-71. "At this point not only was it not suggested that they hold their assembly elsewhere, or disband, but they were affirmatively told that they could hold the demonstration on the sidewalk of the far side of the

[16] *See* Footnote No. 3, above.

street, 101 feet from the courthouse steps." *Id.* at 571. "Thus, the highest police officials of the city, in the presence of the Sheriff and Mayor, in effect told the demonstrators that they could meet where they did, 101 feet from the courthouse steps, but could not meet closer to the courthouse." *Id.* at 570–71.

The Supreme Court in *Cox* distinguished its holding from a "waiver of law" which "is beyond the power of the police." *Id.* at 569. "Obviously telling demonstrators how far from the courthouse steps is 'near' the courthouse for purposes of a permissible peaceful demonstration is a far cry from allowing one to commit, for example, murder, or robbery." *Id.* at 569.

Here, Mr. Bingert is charged mainly with violating similar statutes:

| | |
|---|---|
| Count One: | Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2), and 2. |
| Count Two: | Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1). |
| Count Three: | Civil Disorder, in violation of 18 U.S.C. § 23l(a)(3). |
| Count Four: | Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(l). |
| Count Five: | Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § l752(a)(2). |
| Count Six: | Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. § l752(a)(4). |
| Count Seven: | Obstructing, or Impeding Passage Through or Within the Grounds or Any of the Capitol Buildings, in violation of 40 U.S.C. § 5104(e)(2)(E). |

Count Eight: Engaging in an Act of Physical Violence in the Grounds or Any of the Capitol Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F).

The statutes here parallel the statute in *Cox* for several reasons. The statutes are intent-based. *Compare Cox* ("Whoever, with the intent of interfering with"); *with* 18 U.S.C. § l 752(a)(2) ("with intent to impede or disrupt"). The statutes prohibit the disruption of government. *Compare Cox* ("obstructing, or impeding the administration of justice"); *with* 18 U.S.C. § 11l(a)(l) ("any person... engaged in or on account of the performance of official duties") *and* 18 U.S.C. § 23l(a)(3)(" to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties") *and* 18 U.S.C. § l752(a)(2) ("to impede or disrupt the orderly conduct of Government business or official functions"). The statutes also apply to restricted government buildings. *Compare Cox* ("near a building housing a court of the State of Louisiana"); *with* 18 U.S.C. § 1752(a)(l) ("any restricted building or grounds") *and* 40 U.S.C. § 5104(e)(2)(F) ("within such proximity to, any restricted building or grounds") *and* ("in the Grounds or any of the Capitol Buildings").

Here, "the record here clearly shows that" then-President Trump "gave permission for the demonstration to take place across the street" from the Capital. *Transcript of Trump's speech at rally before US Capitol riot (Jan. 13, 2021; see* Footnote No. 6*)* (then-President Trump affirmatively told Mr. Bingert and other supporters "to walk down Pennsylvania Avenue" "to demand that Congress do the right thing and only count the electors who have lawfully slated"); *and Cox* at 569

("The record here clearly shows that the officials present gave permission for the demonstration to take place across the street from the courthouse"). Furthermore, Metropolitan Police "had prior notice" of the demonstration in proximity to the Capital. H.R. Rep No. 117-000, at 432 ("Although certain members of the Capitol Police leadership regarded their approach to January 6th as "all hands on deck," the Capitol Police leadership did not have sufficient assets in place"); *and Cox* at 159 ("The police admittedly had prior notice that the demonstration was planned to be held in the vicinity of the courthouse"). However, unlike *Cox* where protesters: (a) decided on their own to protest; and then (b) "were affirmatively told that they could hold the demonstration on the sidewalk of the far side of the street" by the Chief of Police, here, Mr. Bingert: (a) was encouraged to protest by then-President Trump; and then (b) approached police officers to seek clarification as to its legality, as required by the public authority/ entrapment by estoppel defense. *Cox.* at 570-71. This difference more persuasively allows for the public authority/ entrapment by estoppel defense because Mr. Bingert, here, was arrested after the Chief Executive and police officers failed to act in unison regarding the state of the law.

Furthermore, Mr. Bingert did not act on a "waiver of law." *Cox* at 569. Mr. Bingert approached the police officers, who assumed bad intent and arrested him. Then-President Trump also made clear that his statements were not a waiver of law by tweeting:

> Please support our Capitol Police and Law Enforcement. They are truly on the side of our Country. Stay peaceful![17]

> I am asking for everyone at the U.S. Capitol to remain peaceful. No violence! Remember, WE are the Party of Law & Order – respect the Law and our great men and women in Blue. Thank you![18]

Lastly, this case is so suitable for the public authority/ entrapment by estoppel defense because it "offends some principle of justice." *Chrestman*, 525 F. Supp. 3d at 29-30. In *Cox*, the Chief of Police told protesters that "picketing in a particular area was lawful" and then arrested protesters for doing just that. *Id.* at 570. Here, then-President Trump used his supporters as a tool to manipulate. In both cases, unknowing protesters were deliberately led into legal error by a high-ranking Executive officer to achieve his personal goal. This is the entire reason behind the public authority/ entrapment by estoppel defense: fairness to the defendant. *Raley v. Ohio*, 360 U.S. 423 (1959), *Cox v. Louisiana*, 379 U.S. 559 (1965), and *United States v. Pennsylvania Industrial Chemical Corp.* ("*PICCO*"), 411 U.S. 655 (1973).

**2. Then-President Trump Was Responsible for Interpreting, Administering, or Enforcing the Law Defining the Offense Because He Was Chief Executive.**

"The executive Power shall be vested in a President of the United States of America." U.S. Const. art. 2, § 1. "Before he enter on the Execution of his Office, he

---

[17] The American Presidency Project, Tweets of January 6, 2021, 19:38:58, *available at* https://www.presidency.ucsb.edu/documents/tweets-january-6-2021

[18] The American Presidency Project, Tweets of January 6, 2021, 20:13:26, *available at* https://www.presidency.ucsb.edu/documents/tweets-january-6-2021

shall take the following Oath or Affirmation: 'I do solemnly swear (or affirm) that I will faithfully execute the Office of President of the United States, and will to the best of my Ability, preserve, protect and defend the Constitution of the United States.'" *Id.*

Then-President Trump was Chief Executive responsible for enforcement of all laws. Like *Cox* where the Supreme Court reasoned that "demonstrators… would justifiable tend to rely on this administrative interpretation" of the law made by the Chief of Police, here Mr. Bingert "justifiabl[y] rel[ied]" on the interpretation of law made by the President. *Cox* at 568. If the United States alleges that the interpretation of law was made in bad faith for personal gain, then the United States should charge former-President Trump.

**3. Mr. Bingert Actually Relied on Then-president Trump's Misleading Pronouncement in Committing the Offense.**

It is axiomatic that Mr. Bingert actually relied on then-President Trump's misleading pronouncement.

**4. Mr. Bingert's Reliance Was Reasonable in Light of Then-president Trump Being the Chief Executive, the Point of Law Misrepresented, and the Substance of the Misrepresentation.**

"[R]easonable reliance occurs" only "if 'a person sincerely desirous of obeying the law would have accepted the information as true and would not have been put on notice to make further inquiries.'" *United States v. Lynch*, 903 F.3d 1061, 1077 (9th Cir. 2018) (internal quotation marks omitted). This Court in *Chrestman* held that "January 6 defendants asserting the entrapment by estoppel defense could not

argue that they were at all uncertain as to whether their conduct ran afoul of the criminal law, given the obvious police barricades, police lines, and police orders restricting entry at the Capitol." *Id.* at 32.

All barricades had been removed by the time he arrived, and he never entered the Capitol building. Mr. Bingert was unsure as to whether his "conduct ran afoul of the law" and approached the group of police officers "to make further inquiries." *Chrestman* at 32; *Lynch* at 1077. Mr. Bingert was one of roughly 10,000 in the crowd and had just reached the West front area near the inaugural stands when a police officer pepper-sprayed him.

Mr. Bingert was not in a group of people who toppled barriers, unlike the defendant in *Chrestman.* That "defendant and his co-conspirators toppled the metal barriers used by Capitol Police to control the crowd… and breached the building." *Chrestman*, 525 F. Supp. at 20. Furthermore, Mr. Bingert had no weapons (he was carrying a U.S. Flag) on his person, unlike the defendant in *Chrestman.* That defendant "can be seen in surveillance footage using his axe handle to obstruct one of the barriers, while all but one of his co-conspirators are seen using their arms, a chair, and a podium to keep other barriers from closing." *Chrestman*, 525 F. Supp. at 20. Instead, Bingert did exactly what a "sincerely desirous [person] of obeying the law" would do: ask a police officer. *Lynch*, 903 F.3d 1061, 1077.

In conclusion, Mr. Bingert's reliance was reasonable because he was unsure as to whether his "conduct ran afoul of the law" and approached the group of police officers "to make further inquiries." *Chrestman* at 32; *Lynch* at 1077. Moreover, Mr. Bingert was always under the impression that the Capitol ground on which he stood

were unrestricted that day due to the President's own statements to have his supporters change the venue from the Ellipse to the Capitol to have their voices heard. Mr. Bingert expected the same peaceful rally to be carried on at the Capitol after the speech, but what he saw instead were officers pushing and hitting innocent citizens invited to peacefully have their voices heard.

**CONCLUSION**

For the reasons presented herein, and for such other reasons which may appear just and proper, Defendant Craig Michael Bingert Bingert, by and through his attorney, Allen H. Orenberg, respectfully submits that this Court should allow Mr. Bingert to raise at trial a public authority and/or entrapment by estoppel defense.

Respectfully Submitted,

Allen H. Orenberg
Digitally signed by Allen H. Orenberg
Date: 2023.01.31 09:16:13 -05'00'

Allen H. Orenberg, # 395519
The Orenberg Law Firm, P.C.
12505 Park Potomac Avenue, 6th Fl.
Potomac, Maryland 20854
Tel. No. (301) 984-8005
Fax No. (301) 984-8008
Cell-Phone (301) 807-3847
aorenberg@orenberglaw.com
Counsel for Craig M. Bingert

Dated: January 31, 2023