## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 1:21-cr-0091-RCL-01** |
| | **:** | |
| **CRAIG MICHAEL BINGERT, et al.** | **:** | |
| **Defendant.** | **:** | |

## <u>DEFENDANT'S MEMORANDUM IN AID OF SENTENCING</u>

COMES NOW ATTORNEY, Allen H. Orenberg, to respectfully submit this Memorandum in Aid of Sentencing on behalf of Defendant Craig Michael Bingert. There can be no dispute that the Court has a duty to deliver a sentence that is not greater than necessary to comply with sentencing purposes. *See* 18 U.S.C. §3553(a).

When fashioning an appropriate sentence, Mr. Bingert requests the Court to impose a sentence which properly reflects a (final) determination of the Advisory Sentencing Guidelines, as well as the other 18 U.S.C. §3553(a)(1-7) factors, including the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Furthermore, the Court should take into consideration a variance downward of at least eight levels from the final U.S.S.G. base offense level. This request is based on two reasons: (1) The extraordinary detrimental impact of the COVID-19 pandemic on incarcerated individuals at the Federal Bureau of Prisons, and (2) His aberrant behavior on January 6, 2021. *See* U.S.S.G. § 5K2.20.

-1-

Respectfully, Mr. Bingert asks the Court to impose a sentence of, essentially, a short term of imprisonment, one year of supervised release, and 150 hours of community service.

## I.    Case Background

Upon hearing that an arrest warrant was lodged against him, Mr. Bingert voluntarily surrendered to the FBI Field Office in Philadelphia, PA, on January 18, 2021. He was presented in the U.S. District Court for the Eastern District of Pennsylvania on a Complaint [1] alleging violations of 18 U.S.C. § 231(a)(3) – Civil Disorder. He was released on a personal bond with conditions. He remains released and it is counsel's understanding he has been in compliance with all conditions since January 18, 2021.

On November 10, 2021, a Second Superseding Indictment issued [53] charging:

> Count 1 – 18 U.S.C. § 1512(c)(2) and (2) (Obstruction of an Official Proceeding and Aiding and Abetting).

> Count 2 – 18 U.S.C. § 111(a)(1) (Assaulting, Resisting or Impeding Certain Officers).

> Count 3 – 18 U.S.C. § 231(a)((3) (Civil Disorder).

> Count 4 – 18 U.S.C. § 1752(a)(1) (Entering or Remaining in any Restricted Building or Grounds).

> Count 5 – 18 U.S.C. § 1752(a)(2) Disorderly and Disruptive Conduct in a Restricted Building or Grounds).

> Count 6 – 18 U.S.C. §1752(a)(4)(Engaging in Physical Violence in a Restricted Building or Grounds).

> Count 7 – 40 U.S.C. § 5104(e)((2)(E) (Obstructing or Impeding Passage Through or Within the Grounds or Any of the Capitol Buildings).

> Count 8 – 40 U.S.C. §5104 (e)(2)(F) (Act of Physical Violence in a the Capitol Grounds or Building).

On May 24, 2023, following a bench trial including co-defendant Isaac Steve Sturgeon,[1] the Court rendered a verdict of guilty as to counts 1, 2, 3, 4, 5, 6, & 8 of the Second Superseding Indictment. During the trial, the Court granted the Government's oral motion to dismiss Count 7. The Court filed its Notes for Oral Ruling From The Bench on the same date. [166]

A sentencing hearing is scheduled for September 26, 2023, at 4:30 p.m.

The U.S. Probation Office is recommending a guideline range of imprisonment of 135 – 168 months, based on an offense level of 33 and a criminal history category of I. *See* Presentence Investigation Report ("PSR") Doc. 189 at ¶127.

The government is recommending a sentence of 135 months incarceration. *See Government's Sentencing Memorandum* [193] at page. 1.

Mr. Bingert and counsel have received and reviewed the (draft & final) PSR. On September 4, 2023, counsel filed the Obligation & Response to Presentence Report Form (draft version) with a comprehensive letter to USPO Andre M. Wilson. [178]

The following encompass the unresolved objections to the PSR.

Page 8, ¶26: Mr. Bingert objects to the language within paragraph no. 26, as it relates to "co-defendant Johnatakis, who has been severed for trial from Mr. Bingert. Mr. Bingert does not agree with the description of conduct by Mr. Johnatakis.

---

[1] The Court severed co-defendant Taylor James Johnatakis on March 23, 2023.

Mr. Bingert objects to the PSR's Guidelines analysis, ¶¶ 44 - 65, & 127. Instead, the following is suggested as the proper Guidelines analysis:

Initially, in ¶¶ 53 and 54, I agree with the Probation Officer that Counts 1, 4, & 5 involved the same victim (Congress) and should be grouped (Group 1) and that Counts 2, 3, & 6 involve the same victim (law enforcement) and should be grouped (Group 2). These counts are grouped as indicated pursuant to USSG §3D1.2(b).

However, the Probation Officer inexplicably states in ¶ 55 that Groups 1 and 2 are grouped together for guideline calculation purposes pursuant to USSG §3D1.2(c). Only counts are grouped, groups are not grouped with other groups. Pursuant to USSG §3D1.1(a), when a defendant has been convicted of more than one count, the Court shall: (1) Group the counts resulting in conviction into distinct Groups of Closely Related Counts ("Groups") by applying the rules specified in USSG §3D1.2; (2) Determine the offense level applicable to each Group by applying the rules specified in USSG §3D1.3; & (3) Determine the combined offense level applicable to all Groups taken together by applying the rules specified in USSG §3D1.4.

For counts grouped together pursuant to §3D1.2(a)-(c), the offense level applicable to a Group is the offense level, determined in accordance with Chapter Two and Parts A, B, and C of Chapter Three, for the most serious of the counts comprising the Group, i.e., the highest offense level of the counts in the Group, pursuant to USSG §3D1.3(a).

For Count 1, the applicable guideline for an offense in violation of 18 U.S.C.

§ 1512(c)(2) is found in USSG §2J1.2. For Counts 4 & 5, the applicable guideline for offenses in violation of 18 U.S.C. § 1752 is found in USSG §2B2.3. In Group 1, Count 1 is the most serious offense. Therefore, USSG §2J1.2 shall be used to determine the offense level for the group.

For Count 2, the applicable guideline for an offense in violation of 18 U.S.C. § 111 is found in USSG §2A2.2. For Count 3, there is no guideline for offenses in violation of 18 U.S.C. § 231(a)(3). Pursuant to USSG §2X5.1 – Other Felony Offenses, if the offense is a felony for which no guideline has been expressly promulgated, apply the most analogous guideline.

Based on Mr. Bingert's alleged conduct in this case, USSG §2A2.4 – *Obstructing or Impeding Officers* is the most analogous guideline. Pursuant to USSG §2A2.4(c)(1), if the conduct constituted aggravated assault, apply USSG §2A2.2 - *Aggravated Assault*. For Count 6, the applicable guideline for an offense in violation of 18 U.S.C. § 1752(a)(4) is found in USSG §2A2.4. Pursuant to USSG §2A2.4(c)(1), if the conduct constituted aggravated assault, apply USSG §2A2.2 - *Aggravated Assault*. Therefore, Counts 2, 3, & 4 are equally serious.

## II.   <u>Guideline Calculations</u>

*Group 1 (Counts 1, 4, & 5)*

Base Offense Level: Pursuant to USSG §2J1.2(a), the base offense level is 14.

Specific Offense Characteristics: It is noted that in *United States v. Seefried,* (D.D.C. 2022), the Court determined that the enhancements in USSG §§2J1.2(b)(1)(B)

and (b)(2) do not apply because the electoral certification does not involve the "administration of justice."

2J1.2(b)(1)(B): An 8 level enhancement under this provision does not apply because Mr. Bingert did not "cause or threaten to cause physical injury to a person, or property damage, in order to obstruct the administration of justice." While Mr. Bingert was convicted of assault, that does not automatically mean that he intended to cause or threaten physical injury. Officer Gonzalez stumbled as a result of several people pushing into a bike rack. There is no evidence that Mr. Bingert's actions directly led to Officer Gonzalez falling back. Furthermore, stumbling and falling is not equivalent to "physical injury" which means physical damage to a person's body. [2] Other than Officer Gonzalez stumbling and falling down, there is no evidence he was physically injured. Also, Mr. Bingert never threatened to cause injury. While he grabbed a barricade, that does not mean he intended to use it to cause injury – which is not a required element of assault and was not a finding by this Court in its decision to convict Mr. Bingert of assault. See Findings of Fact, ECF No. 166.

Regarding 2J1.2(b)(2): The government is incorrect that a 3 level enhancement applies because this offense did not result in "substantial interference with the administration of justice." See United States v. Hunter Seefried, 21-cr-287 (TNM), Memorandum Opinion, ECF No. 123. This argument equally applies to § 2J1.2(b)(1)(B) – which also requires that the threat of physical injury be done in

---

[2] *See e.g.*, Black's Law Dictionary 906, 1331 (10th ed. 2014).

order to obstruct the administration of justice. For the reasons described in Seefried, neither 2J1.2.(b)(1)(B) or 2J1.2(b)(2) apply.

Victim Related Adjustment: For this group, Congress is the victim. Pursuant to USSG §3A1.2, Application Note # 1, this guideline applies when specified individuals are victims of the offense. This guideline does not apply when the only victim is an organization, agency, or the government.

Adjustment for Role in the Offense: None.

Adjustment for Obstruction of Justice: Mr. Bingert denies he testified falsely at trial, nor did he intentionally delete any pictures of videos from his phone in an attempt to obstruct justice. *See* PSR ¶ 42. Mr. Bingert did not attempt to willfully obstruct or impede the administration of justice, pursuant to USSG 3C1.1. Mr. Bingert was merely exercising his constitutional right to explain to the Court his actions on January 6, 2021. Notwithstanding the government's assertions that he obstructed justice by testifying falsely at trial,[3] he should not receive a 2-level upward adjustment for Obstruction or Impeding the Administration of Justice, pursuant to USSG §3C1.1. The Court (as the fact-finder at trial) is in the best position to assess the credibility of Mr. Bingert and make this determination.

However, while the United States Supreme Court has recognized that a trial court is within its discretion to enhance a defendant's sentence under USSG § 3C1.1 when a defendant testifies and is nevertheless convicted, the Court was careful to note that such an enhancement is only appropriate when there is false testimony given

---

[3]     *See Government's Sentencing Memorandum* [193] at page 9.

with a "willful intent to provide false testimony." *United States v. Dunnigan*, 507 U.S. 87, 94–95, 113 S. Ct. 1111, 122 L. Ed. 2d 445 (1993). As the Court recognized, "not every accused who testifies at trial and is convicted will incur an enhanced sentence under § 3C1.1 for committing perjury." *Id.* at 95. As the Court explained, "an accused may give inaccurate testimony due to confusion, mistake, or faulty memory." *Id.* The comments to the Guideline itself also recognize this. *See* USSG § 3C1.1, cmt. 2 ("In applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements some times may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct jus-tice.").

The United States Court of Appeals for the D.C. Circuit has previous applied an enhanced standard for evaluating the application of the enhancement, one which requires clear and convincing evidence of a perjury on the part of the defendant. *United States v. Montague*, 40 F.3d 1251, 1256 (D.C. Cir. 1994). The court further mandated "cases that cause a district court pause require separate and clear findings and careful attention to the evaluating standard in supporting the determination." *Id.*; *see also Dunnigan*, 507 U.S. at 97 ("the trial court must make findings to support all the elements of a perjury violation in the specific case."). Although this holding has not been expressly overruled, the court in a subsequent opinion, noted in a footnote that effective November 1, 1997, the Sentencing Commission deleted language from the commentary to §3C1.1 so that the Application Note "no longer suggests the use of

a heightened standard of proof." *United States v. Dozier*, 162 F.3d 120, 124 n.1 (D.C. Cir. 1998) (quoting U.S.S.G. App. C, amend. 566 (Nov. 1997)).

Mr. Bingert objects to probation applying an additional 6 level enhancement pursuant to Chapter 3. *See* PSR ¶60. U.S.S.G. § 3A1.2 (c)(1) explains that, if, in a manner creating substantial risk of serious bodily injury, the defendant or a person for whose conduct the defendant is otherwise accountable –then a 6 level enhancement applies when the victim is a law enforcement officer. First, in choosing to use the 2J1.2 guideline rather than the Aggravated Assault guideline under U.S.S.G. § 2A2.2, probation cannot then also add an additional enhancement that accounts for the same conduct it outlines in the 8 level enhancement pursuant to 2J1.2 (b)(1)(B). That would be clear double counting. Furthermore, the application note of 3A1.2(c)(1) emphasizes that this 6 level enhancement is only to be applied in connection with "Aggravated Assault." *See* Application Note 4(A). The sentencing guidelines, therefore, clearly intend that this guideline only be used when applying the Aggravated Assault guideline – not the obstruction guideline which already calls for an 8 level enhancement if there is an injury or a threat to injure.

The courts have routinely *only* applied the 8 level enhancement in past January 6 cases when using the 2J1.2 guideline. The government has also acknowledged that it cannot request both enhancements when using the Obstruction guideline. *See United States v. Gregory Rubenacker*, 1:21-cr-193 (BAH), Gov. Sent. Memo, ECF No. 56 (Defendant with identical convictions as (co-defendant) Mr. Sturgeon - government calculates guidelines under 2J1.2 even though defendant convicted of assault on an

officer and only advocates for 8 level enhancement pursuant to 2J1.2(b)(1)(B) and not

an additional 6 level enhancement pursuant to 3A1.2(c)(1) – court then adopts this

argument and final guideline range is 41-51 months); *United States v. Scott Fairlamb*,

1:21-cr-120 (RCL), ECF No. 38, Plea Agreement at page 3. (Government plea

agreement does not contemplate 6 level enhancement pursuant to 2J1.2 and therefore

guideline range is 41-51 months); *United States v. Dale Jeremiah Shalvey*, 21-cr- 334

(TJK), ECF No. 70, Plea Agreement at page 3 (same); *United States v. Mitchell Todd

Gardner II*, 21-cr-622  (APM), ECF No. 48 at page 3 (same except 2A2.2 is applied

ultimately because it produces a higher range); *United States v. Daniel Scott*, 21-cr-

292 (RCL), ECF No. 208, Plea Agreement at page 3 (plea agreement does not propose

double counting by adding 6 level official victim enhancement under 2J1.2. guideline);

*United States v. Brian Gunderson*, 21-cr-137 (RC), ECF No. 54, Gov. Sentencing Memo

at 22 (government files sentencing memorandum after stipulated bench trial and does

not ask for additional 6 level enhancement under 2J1.2)

Even though this provision clearly does not apply, there also can be no

credible claim that Mr. Bingert "created a substantial risk of *serious bodily injury*"

as required by this provision. Officer Gonzalez did not even sustain "bodily injury"

and certainly was not at risk for experiencing "serious bodily injury," which is

defined as "injury involving extreme physical pain or the protracted impairment of

a function of a bodily member, organ, or mental faculty; or requiring medical

intervention such as surgery, hospitalization, or physical rehabilitation. U.S.S.G. §

1B1.1 (M). *See Swinton v. United States*, 902 A.2d 772, 775 (D.C. 2006) (finding

insufficient evidence of serious bodily injury when victim had to go to the hospital but injury did not rise to the level of serious – noting other cases where serious bodily injury was found where injuries were typically life-threatening or disabling). At trial, Officer Gonzalez testified that while pushing the whole crowd back, he "hurt his leg in the process, just a minor injury…I took a couple of seconds to make sure that I was fine…..then I just went back and continued to do my job." *See* Trial Transcript, May 15, 2023, at 138. There was no testimony that Officer Gonzalez had to seek medical attention. *Id*. For these reasons, what occurred certainly did not rise to level of "serious bodily injury" and this enhancement is not appropriate for this reason as well.

Adjusted Offense Level (Group 1 Subtotal):                     **14**

*Group 2 (Counts 2, 3, & 6)*

Base Offense Level: Pursuant to USSG §2A2.2(a), the base offense level is **14.**

Specific Offense Characteristics: None.                     **0**

Victim Related Adjustment: 3A1.2(c)(1).                     **0**

Adjustment for Role in the Offense: None.                     **0**

Adjustment for Obstruction of Justice: Mr. Bingert denies he testified falsely at trial, nor did he intentionally delete any pictures of videos from his phone in an attempt to obstruct justice. Mr. Bingert exercised his constitutional right to task the prosecution to prove, beyond a reasonable doubt, the allegations lodged against him in the Second Superseding  Indictment.[53]                     **0**

Adjusted Offense Level (Group 2 Subtotal):                          **14**

Combined Offense Level (Subtotal):                                  **14**
Chapter Four Enhancement: None.                                     **0**
Acceptance of Responsibility:                                       **0**
Total Offense Level:                                                **14**

Based on a total offense level of 14 and a Criminal History Category of I, the

advisory sentencing guidelines range is 15-21 months, and the fine range is $15,000 -

$150,000.

### III.    **Restitution**

Mr. Bingert objections to probation's assessment that restitution is mandatory.

*See* PSR at para. Nos. 161-162. Firstly, probation provides 18 U.S.C. § 3663 (a)(3) in

support of its position. However, this provision states that "the court may also order

restitution in any criminal case to the extent agreed to by the parties in a plea

agreement." There was no executed plea agreement in this matter as it to

proceeded to trial.

In any event, restitution is not mandatory under any of the other statutory

provisions in 18 U.S.C. § 3663. "Restitution is exclusively a creature of statute," and

thus, the penalty must follow strict statutory guidelines without expanding its

scope. U.S. v. Udo, 795 F.3d 24, 33 (D.C. Cir. 2015). The two statutes that create

restitution are 18 U.S.C. § 3663, which addresses restitution generally, and § 3663A,

which creates mandatory restitution for victims of certain crimes. An order

of restitution under 18 U.S.C. § 3663 applies to certain drug offenses or offenses

-12-

under § 3663A, namely crimes of violence[4], offenses against property, or offenses "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1)(A)-(B). A "victim" is "a person directly and proximately harmed" by the offense committed or, if the offense includes "as an element a scheme, conspiracy, or pattern of criminal activity," any person who is directly harmed in the course of the scheme. 18 U.S.C. § 3663(a)(2).

Probation has named the victim to be the "Architect of the Capitol." However, Mr. Bingert did not directly or proximately harm the Capitol building. He did not even enter the building and caused no damage to its interior or exterior. Calculation of loss from the underlying conduct of the offense of conviction establishes the "outer limits of a restitution order." *Hughey v. U.S.*, 495 U.S. 411, 420 (1990). Therefore, if the conduct that gave rise to the charge did not cause actual loss, the Court will not issue a restitution order. *See Id.* at 418-9.

Officer Gonzalez is also not the victim for purposes of mandatory restitution. As discussed above, there was no injury that resulted in this case. Officer Gonzalez did not seek medical attention and was able to resume his work at the Capitol building. Without an identifiable injury, the statute does not mandate restitution.

---

[4] 18 U.S.C § 16 defines t"crime of violence" as (a) an offense that has an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of the offense.

Counsel is aware of at least one other January 6, 2021 prosecution where the Court declined to enter an order of restitution following a bench trial conviction(s).[5]  In *USA v. Joshua C. Doolin,* 21-447-CJN, Judge Carl J. Nichols did not enter an Order of restitution. Undersigned counsel represented Mr. Doolin at trial and sentencing. It is my recollection Judge Nichols when sentencing Mr. Doolin found he had discretion as to whether or not he may enter an Order of restitution following a (bench) trial. (The 8/16/2023 sentencing hearing transcript has not yet been produced)

## IV.   <u>Framework And The Guidelines Are Not Mandatory</u>

The Court has broad discretion to consider nearly every aspect of a particular case, and a particular defendant, in fashioning an appropriate sentence. In early 2005, the United States Supreme Court declared that the Guidelines are advisory, rather than mandatory. *United States v. Booker* 543 U.S.220, 125 S.Ct. 738, 160 L. Ed 2d 621 (2005). Although the Court must consider the Guidelines in imposing a reasonable sentence, the Guidelines are now merely "advisory," constituting just one factor to be considered on equal footing with the other sentencing factors found in 18 U.S.C. §3553 (a). *See id.* at 757,764 – 67, 790.

The *Booker* Court also re-emphasized that the primary sentencing mandate of §3553 (a) is that courts must impose the least amount of imprisonment and sentence necessary to achieve the statutory purposes of punishment-justice, deterrence, incapacitation, and rehabilitation; the court shall impose a sentence sufficient, but not

---

[5]      Mr. Doolin was convicted of: 18 U.S.C. § 641, 18 U.S.C. § 231(a)(3), 18 U.S.C. § 1752 (a)(1), 18 U.S.C. § 1752 (a)(2), & 18 U.S.C. § 1752 (b)(2),

greater than necessary, to comply with the purposes set forth in (18 U.S.C.

§3553(a)(2). 18 U.S.C. §3553(a).[6] This represents a cap above which the Court is

*statutorily prohibited* from sentencing - even when a far greater sentence is

recommended by the advisory sentencing guidelines. *See, United States v. Denarli*, 892

F.2d 2698, 276-77 (3rd Cir. 1989)(Becker, J., concurring in part, dissenting in part).

In *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558 (2007), and *Gall v. United*

*States*, 552 U.S. 38 (2007), the Supreme Court held that the sentencing guidelines are

simply an advisory tool to be considered alongside other statutory considerations set

forth in 18 U.S.C. §3553 (a). In two more recent summary reversals, the Court further

made clear that the Guidelines cannot be used as a substitute for a sentencing court's

independent determination of a just sentence based upon consideration of the

statutory sentencing factors. *Nelson v. United States*, 129 S. Ct. 890 (2009), 2009 WL

160585 (Jan. 26, 2009); *Spears v. United States*, 129 S. Ct. 840 (2009). Rather, the

court must weigh each of the factors and impose a sentence that constitutes the least

amount of imprisonment necessary pursuant to Section 3553(a). Moreover, as the

Supreme Court reiterated, in imposing sentence, "the punishment should fit the

---

[6] 18 U.S.C. §3553 (a) states, in pertinent part, "The court shall impose a sentence sufficient, but not greater than necessary, to comply with purposes set forth in paragraph (2) of this subsection.  The court, in determining the particular sentence to be imposed, shall consider – (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."Furthermore, paragraph (3) of this subsection directs the Court to consider "the kinds of sentences available."

offender and not merely the crime." *Pepper v. United States*, 131 S.Ct. 1229, 1240

(Mar. 2, 2011).

## V.    Nature and Circumstances of the Offense
and History and Characteristics of Mr. Bingert

The Court must consider the specific history and character of the defendant and

the specific circumstances and seriousness of the offense and impose no more of a

sentence than is necessary to promote respect for the law, provide just punishment

and treatment, afford adequate deterrence, protect the public, allow restitution to

victims, and avoid unwarranted inconsistency among similarly situated defendants.

18 U.S.C. § 3553(a). The Court is no longer limited in the factors it may consider, and

may consider any factors it believes relevant to tailoring an individualized and

appropriate sentence.[7]

The personal characteristics, including personal and family data, physical

condition, mental and emotional health, substance abuse, education, employment and

financial history of Mr. Bingert also encourage the sentencing proposal herein. These

factors are discussed more fully in the PSR, ¶¶92-119.

Mr. Bingert has no significant criminal history except for seven minor traffic

citations occurring over a 10 year period. PSR, ¶¶82-88.

---

[7]

Under 18 U.S.C. §3661, "*no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth.

Mr. Bingert was born on July 13, 1998[1] and natural his parents are presently living in Florida. He has two younger siblings. He reports he has relationships with his immediate family, including his grandmother. He had a "great"childhood, as he was raised in a loving and financially stable home. PSR, ¶¶93-95. He has never married.

Mr. Bingert is in good health and no history of health problems, including mental health or substance abuse. PSR, ¶¶99-105.

Mr. Bingert graduated high school in 2009, and has attended two colleges, graduating in 2013 with a Bachelor's Degree. He has a certificate for power operated machines. PSR, ¶¶106-107.

Prior to his arrest in this case, (January, 2021) he was unemployed. He is presently employed as a landscaper in Copley, PA. Prior to this position, he has worked a variety of jobs including landscaping, retail sales, food distribution warehouse worker, gas station attendant, and in a restaurant. PSR, ¶¶108-114.

According to the PSR, he does not have the ability to pay a fine. PSR, ¶119. However, if the Court imposes a period of incarceration, then he will not be able to pay a fine as he will not be gainfully employed. And, according to Mr. Bingert, the $1,865.00 raised by way of the on-line website (www.givesendgo.com) was used exclusively for travel & accommodation expenses incurred while he was attending the trial of this case in May, 2023. *See* PSR ¶118. Under this scenario, Mr. Bingert asks the Court to waive any fine in his case.

Attached are letters from Mr. Bingert's parents, Craig R. Bingert & Vanya

Bingert. Both give the Court a unique perspective as to the type of child and man their

son is, notwithstanding his aberrational conduct on January 6, 2021.

### VII.   Respect for the Law and Deterrence

Mr. Bingert exercised his Constitutional right to a trial. He appeared in a

timely manner for all court proceedings, including the trial. His personal history and

characteristics as described throughout this memorandum, as well as noted in

"support" letters from his parents,  it is improbable that he will participate in

dishonest, reprehensible or criminal activities in the future. There are numerous

reasons to be optimistic that Mr. Bingert will not engage in further criminal behavior,

including the support of his large family & friends, he is now 32 years old and

determined to be a productive and responsible member of society, the promise that

others have seen in him, as well as his own expected statements to this Court at the

sentencing hearing about the hope he has for his future. A lengthy prison sentence

would have no greater effect toward the goals of sentencing than a short period of

imprisonment as proposed herein.

### VIII.  The Need to Avoid Unwarranted Sentencing Disparities, and Impose A Sentence That Reflects The Seriousness of the Offense

There is no dispute that Mr. Bingert's criminal convictions are serious and will

likely have irreparable unintended consequences. Any lengthy prison term would

nonetheless be an inappropriate sentence for Mr. Bingert. And, the Court should not

impose a sentence which would result in an unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Counsel has surveyed other similar January 6th cases / sentences and notes the following:

- **Troy Sargent, 1:21-CR-00258-TFH**

Mr. Sargent pled guilty to almost the exact same crimes Mr. Bingert was found guilty of following a bench trial: 18 U.S.C. § 231(a)(3), 18 U.S.C. § 111(a)(1); 18 U.S.C. § 1752(a)(1); 18 U.S.C. § 1752(a)(2); 18 U.S.C. § 1752(a)(4); 40 U.S.C. § 5104(e)(2)(F). Mr. Sargent was sentenced to 14 months' incarceration, 24 months' supervised release, and $500 restitution.

Mr. Sargent stood with a group of rioters pressed against a police line. *See* Troy Sargent Statement of Offense at page 3, para no. 9. Mr. Sargent stepped forward and swung his open hand toward a U.S. Capitol Police officer, making contact. *Id.* Mr. Sargent attempted the same action moments later, but missed. *Id.*

- **Matthew Council, 1:21-CR-00207-TNM**

Mr. Council pled guilty to almost the same exact crimes Mr. Bingert was found guilty of following a bench trial: 18 U.S.C. § 231(a)(3); 18 U.S.C. § 111(a)(1); 18 U.S.C. § 1752(a)(1); 18 U.S.C. § 1752(a)(2); 40 U.S.C. § 5104(e)(2)(D); 40 U.S.C. § 5104(e)(2)(G). Mr. Council was sentenced to 60 months' probation, including 180 days' home incarceration, 100 hours community service, and $2,000 restitution.

Mr. Council walked through the Parliamentarian Door of the U.S. Capitol Building. *See* Matthew Council Statement of Offense at page 4, para no. 11. Mr.

Council approached a line of U.S. Capitol Police officers and pushed them. *Id.* Mr.

Council fell onto the ground and was arrested. *Id.*

- **Philip Young, 1:21-CR-617-DLF**

Mr. Young pled guilty to almost the exact same crimes Mr. Bingert was found

guilty of following a bench trial: 18 U.S.C. § 111(a)(1); 18 U.S.C. § 231(a)(3); 18 U.S.C.

§ 1752(a)(2); 18 U.S.C. § 1752(a)(4); 40 U.S.C. § 5104(e)(2)(D); 40 U.S.C. §

5104(e)(2)(F). Mr. Young was sentenced to 8 months' incarceration, 36 months'

supervised release, and $2,000 restitution.

Mr. Young pushed a bike rack into two police officers from the Metropolitan

Police Department. *See* Philip Young Statement of Offense at page 4, para no. 2.

The case of Mr. Bingert may be analogized to these other cases where January

6th defendants pushed police officers with bike racks serving as barricades. Like Mr.

Sargent, Mr. Council, and Mr. Young, Mr. Bingert was one of several January 6th

defendants who picked-up a barricade and pushed against police officers. Admittedly,

these defendants' actions hurt police officers on the other side of the line. But, no

police officer in any of these cases suffered serious bodily harm.

To avoid an unwarranted sentencing disparity among similar January 6th

defendants with similar charges and conduct, the Court should fashion a sentence for

Mr. Bingert which is the same or less than that of Troy Sargent (14 months

imprisonment) by ordering a short prison term, followed by 12 months of supervised

release, and 150 hours of community service.

### IX.     Sentencing in the COVID-19 Era

Pursuant to the 18 U.S.C. §3553 (a) sentencing factors, the Court needs to consider the impact of the COVID-19 pandemic on incarcerated individuals and, on this basis, grant Mr. Bingert' request for a variant sentence – a deduction of at least three levels from the final USSG base offense level. During the past three+ years, COVID-19 has rampaged through the BOP facilities, causing extraordinary fear among the inmates and resulting in "lock-down" type conditions.

It is counsel's understanding (from recent anecdotal stories related by current & former incarcerated clients and their families) some of the BOP facilities remain on a "modified operations" status because of COVID-19 concerns. Presently, the BOP website does not officially announce a status of "modified operations" because of COVID-19.[8]

Because of COVID-19, the unusually harsher "prison" conditions, including lengthy "lock-downs," will unjustly, add to the appropriate sentence/punishment for Mr. Bingert in this case. The mental strain and stress from the fear of becoming infected, as well as possibly suffering severe health consequences, is a new risk while incarcerated and a deterrent to being locked-up again in the future. Not having the control to maintain proper social distancing and exercise proper hygiene to reduce the risks of contracting the virus were real factors for those persons incarcerated within the BOP.

---

[8]       https://www.bop.gov/ – last accessed on Sept. 19, 2023.

Under the 3553(a)(2)(A) factor of imposing just punishment the court should consider the BOP "modified operations" status. Family and friends are prohibited or otherwise restricted from visiting. Programming, absent select UNICOR operations, is restricted and movement throughout certain detention facilities are also restricted or may be suspended. Mr. Bingert may be subjected to (unofficial or official) modified BOP operations, including the distinct possibility of being prohibited from seeing loved ones and unable to engage in rehabilitative or productive programming. CDC guidance, such as social distancing, is simply impossible to achieve in our federal prisons — particularly during pandemic related lock-downs. Incarcerated individuals share bathrooms, sinks, showers, and telephones. They eat together, and sleep in close proximity to each other. They lack the freedom to bath regularly and, essentially  are unable to effectively disinfect their surroundings. Unsurprisingly, during the past 3 + years approximately 1/3 of all BOP tested positive for the COVID-19 virus and at least 276 inmates have died.[9]

As such, if Mr. Bingert is remanded to the custody of the BOP he may well experience harsher confinement conditions because of ongoing consequences connected to the COVID-19 pandemic. Accordingly, the Court should acknowledge the deleterious impact the COVID-19  pandemic has created on confinement conditions during the past 3+ years and fashion an appropriate variant sentence. COVID-19 remains viable and dangerous within the U.S. Prison System, and this is an

---

[9] https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp#alltimeCovidDemographics – last accessed on Sept. 19, 2023)

unintended (and inherently dangerous) consequence of any custodial sentence this Court may impose.

### X.   A Variance is Appropriate as Mr. Bingert Engaged in Aberrant Behavior on January 6, 2021

U.S.S.G. § 5K2.20(b) (Policy Statement) advises  that,

> "The Court may depart downward under this policy statement only if the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life."

In January 2021, Mr. Bingert decided to go to Washington D.C. He had little interest in politics, but he did believe that there were irregularities with the 2020 presidential election which garnered his attention. He did not engage in "significant planning," rather he merely decided to come to Washington D.C., to participate in the "Stop The Steal Rally" on the Ellipse. It was only while he was at the rally on the Ellipse, that he decided to proceed to the U.S. Capitol area that afternoon. His criminal conduct that afternoon was of "the spur of the moment" and, for the reasons more fully discussed herein, his conduct represents a marked deviation from an otherwise law abiding life.

Counsel is aware of one other January 6th prosecution, trial and sentencing when "aberrant behavior" resulted in the Court granting a downward variance.

In *United States v. Robert Dennis*, 21-679-JEB, Chief Judge Boasberg granted a downward variance base apparently based on aberrant behavior. The U.S. Guidelines

range of imprisonment was 41-51 months, however Chief Judge Boasberg varied

downward stating:

> "So I believe the appropriate sentence is 36 months.
> Now, that's considerably less than the government is asking
> here. And as I said, I would vary regardless of what the
> guidelines are, and that's, given your age, your lack of other
> criminal history, and given what occurred on that day and
> everything that I saw in the trial, I believe that's the
> appropriate sentence."

*See* Sentencing Transcript, page 21, 21-679-JEB, 4/13/2023 (copy attached)

Similarly, Mr. Bingert's conduct resulting in his January 6th convictions

constitute aberrant behavior from an otherwise law-abiding life. Therefore, a

downward variance is appropriate pursuant to U.S.S.G. § 5K2.20(b) (Policy

Statement).

### XI.   The Kinds of Sentences Available and the Defendant's Sentencing Proposal

According to the PSR, Mr. Bingert faces a Sentencing Guidelines recommended

term of imprisonment in the range of 136-168 Months. (Total Offense Level 33,

criminal history category I) And, Mr. Bingert has herein challenged the PSR

Guidelines range. Of course, the Supreme Court has ruled that the punishment

guidelines set out by the Commission are entirely advisory, so that range of

punishment is simply one factor to be considered. Congressional enactment, as

opposed to the administrative guidelines from the Sentencing Commission.

Undersigned counsel is unaware of anything that might warrant a sentence greater

than the most severe punishment advised by the advisory guidelines by the

Sentencing Commission. This Court is required to consider other factors set out in 18 U.S.C. § 3553 (a). Of course, the Court need not march through a rote parroting of those factors, and counsel need not drag the Court through such a recitation. The purposes of sentencing include punishment, rehabilitation, general deterrence, specific deterrence and incapacitation.

Here, Mr. Bingert has already been punished in numerous ways, some of which will continue throughout the remainder of his life. He now has a federal felony conviction as a 32 year old, which will directly impact future opportunities, e.g., to get a good job, possess firearms, among other things. His actions have placed him on the news in every living room, not only in his home city in Pennsylvania, but throughout the entire country, with many having lumped him together with right wing extremists /groups. The extensive information that is on the internet about him and January 6th will surely follow him for the rest of his life.

As to specific deterrence, Mr. Bingert's likelihood of recidivism is low. He has zero criminal history and is proclivity to commit future crimes just does not exist. A punishment of any lengthy prison time in this case (as recommended in the PSR and by the government) would have the exact opposite effect from what is in the interest of justice. The alternatives to incarceration make financial sense, conserve bed space for individuals from which society would need greater protection and would serve the ends of justice.

Undersigned counsel respectfully submits that a variant sentence below the guideline range is "sufficient, but not greater than necessary, to comply with" the

purposes of punishment. Any lengthy term of active incarceration will impose a serious deprivation of his liberty and reflects the seriousness of the offense, promotes respect for the law and provides a just punishment – i.e., a punishment that "fits the crime"—and it also affords adequate deterrence to other similarly situated persons who may be tempted to take the same course of action as Mr. Bingert. It is respectfully submitted that a short period of imprisonment, followed by a one year term of supervised release, and 150 hours of community service, are the realistic outer limits of punishment that may be "sufficient, but not greater than necessary," to impose on Mr. Bingert. And, the sentence proposed herein will protect the public from further crimes of  Mr. Bingert.

## **CONCLUSION**

District Courts have been tasked with crafting sentences that best serve the interests of justice in each individual case. Considering the arguments set forth herein Mr. Bingert respectfully asks this Court to use its discretion to fashion a sentence which takes into account the unique circumstances of Mr. Bingert's conduct, personal history, his aberrant behavior on January 6, 2021, to avoid any sentencing disparities, and the harsh on-going pandemic conditions facing him within the BOP. As discussed herein the Court should consider and assign a downward variance.

Furthermore, Mr. Bingert has had ample time to reflect on his mistakes, and he is deeply regretful. He should not be considered a future risk to the community and he has been sufficiently deterred from committing future crimes. Mr. Bingert is

fundamentally a good person, and there is nothing to suggest that he will be anything other than that moving forward in his life.

At the sentencing hearing, Mr. Bingert may publicly express his remorse and that he recognizes that he will have to live for the rest of his life with the harsh consequences of these felony convictions, both personally and in his pursuit of gainful employment.

Mr. Bingert is ready and willing to comply with all terms of any sentence imposed. He understands and recognizes that even the slightest violation of a sentencing condition may result in another period of federal imprisonment. The prolonged loss of his liberty, including the devastating and irreparable consequences to his family, is more than enough incentive for him to respect and comply with all aspects of any sentence imposed.[10]

As presented herein, the 18 U.S.C. §3553 (a) sentencing factors, (a sentence should be "sufficient but not greater than necessary") to comply with sentencing goals, the Plea Agreement, including the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, as well as the concerns of the court and the community, will be satisfied by proposed sentence herein.

---

[10]

Furthermore, there is a remarkable cost savings to the taxpayers of the United States if the Court imposes a shorter, rather than a longer term of incarceration. As noted in the PSR, (¶160) the monthly cost of imprisonment is $3,688.00, $2,980.00 for community confinement, and $371.00 monthly for supervision.

Respectfully, Mr. Bingert asks the Court to impose a variant sentence consisting of, essentially, a short term of imprisonment, one year of supervised release and 150 hours of community service. Such a sentence does nothing to undermine the deterrent effect of sentencing. Neither does such a sentence undermine the statutory need for the Court to underscore, for Mr. Bingert and for the community, the seriousness of the offense for which he is being sentenced. As proposed herein, the sentence appropriately provides just punishment and respect for the law, so that he may continue to be with his family, and continue to live a productive and law-biding life. To do otherwise would be manifestly unjust and a miscarriage of justice.

Finally, if a period of incarceration is imposed, Mr. Bingert is asking the Court for the following recommendations:

1.      A judicial recommendation to the Federal Bureau of Prisons his designation to be either Allenwood Low and/or within the Middle Pennsylvania geographic area. Such a designation will allow his immediate family and friends to visit with him without undue financial or logistical hardship, and

2.      A judicial recommendation to the Federal Bureau of Prisons Mr. Bingert participate in the following programs: Federal Prisons Industries Program and the Occupational Industries Program.

Respectfully submitted,

THE ORENBERG LAW FIRM, P.C.

_____

Allen H. Orenberg, Bar No. 395519
12505 Park Potomac Avenue, 6th Floor
Potomac, Maryland 20854
Telephone:   (301) 984-8005
Fax:              (301) 984-8008
Cell-Phone:  (301) 807-3847
aorenberg@orenberglaw.com
Counsel to Craig Michael Bingert

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 19, 2023, I caused a copy of the foregoing

Defendant's Memorandum in Aid of Sentencing, with Exhibits, to be served by

CM/ECF to case registered parties, and by e-mail to USPO Andre M. Wilson.


_____
Allen H. Orenberg